CRYSTAL GROWER'S CORPORATION, American Crystal Sugar Company, a Minnesota cooperative, American Crystal Sugar Company, a dissolved New Jersey Corporation, Wilburn Brekken and Arnet Weinlaeder, Plaintiffs-Appellants,

v.

Cris DOBBINS, C. W. Briggs, F. C. Zitkowski, Donald S. Graham, G. B. Aydelott, Stewart Cosgriff, Richard M. David, C. B. Flick, D. J. McGanney, Karl W. Mehlmann, John C. Mitchell and Harry T. Lewis, Jr., and United Bank of Denver, N. A., for E. Warren Willard, Deceased, and Davis, Graham & Stubbs, a partnership, the Boettcher Foundation, a Colorado Non-Profit Corporation, and Boettcher Realty Company, a Colorado Corporation, Defendants-Appellees.

No. 78–1451.

United States Court of Appeals, Tenth Circuit.

Submitted Feb. 5, 1980.

Decided Feb. 25, 1980.

Elmer B. Trousdale of Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn. (Bradley G. Clary, Janice Mileo and Madge Thorsen of Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., and William R. Humphrey and Fred Hamel of Humphrey & Hamel, Denver, Colo., with him on briefs), for plaintiffs-appellants.

Walter A. Steele of White & Steele, P. C., Denver, Colo. (James D. Hinga, Denver, Colo., with him on brief) for defendants-appellees Cris Dobbins, F. C. Zitkowski, Donald S. Graham, G. B. Aydelott, Stewart Cosgriff, Richard M. Davis, C. B. Flick, D. J. McGanney, Karl W. Mehlmann, John C. Mitchell and Harry T. Lewis, Jr., and United Bank of Denver, N. A., for E. Warren Willard, Deceased.

Robert J. Kapelke of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., on the brief for defendant-appellee C. W. Briggs.

Robert S. Warren of Gibson, Dunn & Crutcher, Los Angeles, Cal. (Ernest W. Lohf of Lohf & Barnhill, P. C., Denver, Colo., with him on brief), for defendant-appellee Boettcher Foundation.

H. Thomas Coghill and Jay Horowitz of Coghill, Goodspeed & Horowitz, Denver, Colo., on brief, for defendant-appellee Boettcher Realty Company.

Mitchell L. Lathrop, Travers D. Wood, Thomas S. Kiddle and Lawrence D. Steckmest of MacDonald, Halsted & Laybourne, Los Angeles, Cal., and Rodney R. Patula of Pryor, Carney & Johnson, Englewood, Colo., on brief, for defendant-appellee Davis, Graham & Stubbs.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The question for decision is whether, under the circumstances of this case, we should order to be sealed the docketing statement, joint appendix, and appellate briefs filed in connection with an appeal to this Court. The question arises in the following context.

In 1972 Crystal Grower's Corporation (Crystal Grower's), owned by various sugar beet growers, and American Crystal Sugar Company (American Crystal) formulated a plan of purchase and merger by which the sugar beet growers would become the only shareholders of American Crystal, the surviving corporation. Before consummation of the transaction, American Crystal was issued a subpoena in connection with a Justice Department investigation into possible antitrust violations committed by American Crystal and other companies. Following meetings between the parties to the proposed agreement, the contract was altered, the chief amendment being a one million dollar reduction of the gross purchase price of American Crystal. The amendment stated that it

represents an agreed upon adjustment because of possible adverse effects on the business and financial condition of American Crystal which might in any manner result from the investigation of its operations now being made by the United States Grand Jury for the Northern District of California in connection with which a subpoena dated December 7, 1972, has been served on American Crystal.

Thereafter, the shareholders of the two companies approved the plan, as amended, and the merger was effected. Four months later American Crystal was converted from a New Jersey business corporation into a Minnesota cooperative corporation.

The federal antitrust investigation continued and resulted in an indictment charging American Crystal and other companies with violations of the antitrust laws. The United States contemporaneously filed a civil action for injunctive relief against those entities and a national federation of sugar beet growers. Following the government's actions, approximately 100 private antitrust suits were initiated against the sugar companies, including American Crystal, alleging the same violations charged by the government. Apparently these actions are all still pending.

In 1976, Crystal Grower's, American Crystal, and the other plaintiffs-appellants brought this suit, alleging fifteen claims for relief based upon federal, state and common law. All the claims hinged upon plaintiffs' assertion that defendants-appellees misled or deceived plaintiffs with respect to American Crystal's possible exposure to antitrust suits. Defendants are the twelve former directors of American Crystal, the law firm of Davis, Graham & Stubbs, which had served as counsel for American Crystal in connection with the merger, and Boettcher Realty Company and Boettcher Foundation, which as shareholders of American Crystal allegedly controlled five of the individual defendants.

In the course of discovery defendants Davis, Graham & Stubbs and the Boettcher entities tendered to plaintiffs a request for production of documents. Plaintiffs withheld 845 of the documents requested, asserting attorney-client privilege and work product immunity. Subsequently, the trial court granted defendants' Fed.R.Civ.P. 37 motion for an order compelling discovery of these documents, which consisted in part of premerger communications between plaintiffs and their attorneys, the law firms of Dosland, Dosland & Nordhougen of Moorhead, Minnesota, and Oppenheimer, Wolff, Foster, Shepard and Donnelly of St. Paul, Minnesota, and various reports prepared by those attorneys.

Defendants asserted, and the trial court agreed, that the documents were relevant to material issues raised by plaintiffs' claims: what representations plaintiffs made to defendants and their agents concerning their knowledge of American Crystal's potential antitrust exposure; what plaintiffs and their agents knew of that potential exposure through their own investigations; upon what facts did plaintiffs rely in going ahead with the merger; and, concerning defenses based upon statutes of limitations, the timeliness of plaintiffs' discovery and awareness of facts regarding American Crystal's alleged noncompliance with antitrust laws.

The trial court did not examine the 845 documents individually; instead, it assumed they were privileged and held that plaintiffs, by filing this lawsuit, put those documents in issue and therefore waived the right to resist production on the grounds of privilege and immunity. The trial judge, however, entered a protective order providing that the documents were to be produced only to the defendants in this lawsuit, and that in the further conduct of this litigation the parties and court would maintain the documents as confidential to the extent possible.

The litigation proceeded, and in April 1978 the trial court entered summary judgment or judgment on the pleadings in favor of the defendants, dismissing all claims. The trial court held as a matter of law that "plaintiffs actually knew, prior to the February 21, 1973 merger, facts sufficient to establish that American Crystal was susceptible to suit for violations of the Antitrust laws." Therefore, the court reasoned that plaintiffs' federal securities acts claims were nonmeritorious because plaintiffs did not reasonably rely upon defendants' representations "that American Crystal had no antitrust exposure," or their claims were barred by applicable statutes of limitations. The trial court also dismissed all state law claims, finding lack of diversity jurisdiction and declining to exercise pendent jurisdiction. The judgments concerning the federal securities law claims were based largely upon evidence in the 845 documents discussed above. The memoranda relating to defendants' motions and the district court's memorandum opinion, all of which quoted from and discussed the documents, were held under seal pursuant to the court's protective order.

Plaintiffs then appealed to this Court, seeking reversal of the judgments below. Among the issues raised by plaintiffs was the propriety of the trial court's ruling that plaintiffs had waived the right to assert the 845 documents were privileged from disclosure under the attorney-client privilege and the work product immunity doctrine.

The record on appeal filed with this Court, parts of which had been sealed pursuant to the trial court's protective order, remained sealed here as a ministerial matter. Plaintiffs requested that we order the amended docketing statement, joint appendix and the appellate briefs be filed under seal. Before making a final ruling thereon, we ordered the parties to brief the question "whether the court may and should order the sealing of such matter consistent with the statutes, rules of court, and the common law protecting the right of the public to inspect judicial records and for judicial proceedings to be open to the public." Plaintiffs and defendants responded with briefs, both sides arguing the documents could and should be sealed during the course of the appeal. The papers were kept under seal pending resolution of this question.

On July 16, 1979, the merits of the appeal were argued orally in open court, the Court having denied plaintiffs' motion to bar public access to the oral arguments. During the argument the specific content of the 845 documents was not discussed. In November the parties reached a settlement agreement and requested the Court to order dismissal of the appeal, which was done November 27, 1979.

The appeal being concluded, the trial court record was returned under seal to the district court. By our order of November 28, 1979, however, the appellate briefs, joint

appendix and amended docketing statement were to be unsealed twenty days after that date. Plaintiffs timely moved this Court to reconsider this order, urging the Court to keep these papers under seal. We stayed the order pending our consideration of the motion.

Turning to the merits, we first note the narrow dimensions of the question before us. The requested order would concern only the docketing statement, joint appendix, and the appellate briefs; we are required to keep in our possession at least one copy of each. Fed.R.App.P. 45(d). Attached to the docketing statement, as required by Tenth Cir.R. 8(d)(3), is the memorandum opinion of the trial court. Contained in the opinion is discussion of and quotation from several of the allegedly privileged or immune documents. The joint appendix also contains a copy of the memorandum opinion. The briefs discuss and quote from the documents upon which the trial court relied. The 845 documents themselves are now in the possession of the district court subject to its orders. Because the case was settled, we did not pass upon the merits of the waiver finding, nor did we examine the documents themselves to rule whether they are privileged or immune. For purposes of this case, we assume they are privileged or immune, as did the trial court. Thus, if the records in this Court are not sealed, we would be deciding *sub silentio* that those documents are not privileged or immune to the extent their contents are discussed in memorandum opinion, briefs and appendix filed here.

■ It is beyond question that this Court has discretionary power to control and seal, if necessary, records and files in its possession.[1] *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *Nixon v. Sirica,* 159 U.S.App.D.C. 58, 79, 487 F.2d 700, 721 (D.C.Cir.1973). *See also Birnbaum v. Wilcox-Gay Corp.,* 17 F.R.D. 133, 139 (D.C.Ill. 1953). In exercising this discretion we weigh the interests of the public, which are presumptively paramount, against those advanced by the parties. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978); *In re Sarkar,* 575 F.2d 870, 872 (Cust. & Pat.App.1978).

At least three possible interests may be asserted in behalf of the general public in a case like this. First is the general interest in understanding disputes that are presented to a public forum for resolution. Second is the public's interest in assuring that the courts are fairly run and judges are honest. Pointing in the other direction, however, is the public interest expressed in the doctrines of attorney-client privilege and work product immunity; a decision circumventing these doctrines poses a significant threat to the free flow of communications between clients and their attorneys and inhibits the ability of lawyers to adequately prepare their clients' cases.

Plaintiffs have a significant interest in preventing public disclosure of the documents at issue in this case. First, disclosure of the contents of communications between themselves and their attorneys and of reports prepared by their attorneys would effectively nullify their claim of privilege without a hearing on the merits. Second, because of the pending private antitrust actions in which American Crystal is a party-defendant, plaintiffs in those actions might obtain information that would be nondiscoverable absent a determination that the documents were not privileged. *See, e. g., Ex parte Uppercu,* 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915); *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir.), *cert. denied,* 380 U.S. 964, 85

---

1. There are no statutes or rules that would seem to limit or preclude the exercise of this power. Federal courts are exempt from the Freedom of Information Act. *See* 5 U.S.C. § 551(1)(B). 28 U.S.C. § 753(b), which provides for recordation of proceedings, applies only to district courts. The same is true of Fed.R.Civ.P. 43(a) and 77(b). We express no opinion on the question whether Congress could limit this power.

S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Olympic Ref. Co. v. Carter*, 332 F.2d 260 (9th Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); Fed.R.Civ.P. 26(b), 34(a).

 Weighing these competing interests,[2] we hold that retaining the appellate documents under seal for a limited time is appropriate in this case. The public's general interest in the honesty and fairness of this Court is not impaired. The only proceeding—oral argument—was open to the public; because of the settlement there will be no decision on the merits of the appeal. The coincidence of the public's and plaintiffs' interest in preserving the attorney-client privilege and the work product doctrine here outweighs the more general public interest in information about disputes in the public courts.[3]

The order will issue to keep under seal the docketing statement, joint appendix, and appellate brief until five years from this date, subject to further order of this Court.

IT IS SO ORDERED.

---

**2.** No person has petitioned this Court showing a particularized need for access to the sealed documents in our possession.

**3.** Plaintiffs also argue that the public policy encouraging settlement of legal disputes weighs in favor of sealing. The argument assumes defendants had some legitimate reason to oppose sealing. But since they had had access to those papers as well as to the allegedly privileged and immune documents, defendants had little or no reason to oppose plaintiffs' motion, as evidenced by their arguments in

favor of sealing in their briefs. We fail to see how this issue could have been a point of controversy between the two sides. *Cf. Ex parte Uppercu*, 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915) (prior settlement not considered as a factor in allowing third party right of access); *Sloan Filter Co. v. El Paso Reduction Co.*, 117 F. 504 (C.C.D.Colo.1902) (stipulated dismissal granted but without provision allowing withdrawal of testimony and exhibits from court files).