256 N.J. Super. 622 (1992)
607 A.2d 1027
ETHAN ZUKERMAN, AN INFANT, BY HIS GUARDIAN AD LITEM ROBERT ZUKERMAN AND ROBERT ZUKERMAN, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
PIPER POOLS, INC., DEFENDANT-RESPONDENT, AND DAVID HOLDEN, ZEITA HOLDEN, ATREO MANUFACTURING CO., INC., ESTHER WILLIAMS POOLS, POSEIDON POOLS, DIV. OF S & V POOLS, INC. IND. AND AS SUCCESSOR IN INTEREST TO ATREO MANUFACTURING CO., INC., GIBRALTAR CORP., J/A/S/ & AS SUCCESSOR IN INTEREST TO ATREO MANUFACTURING CO., INC., ARTHUR RAMBO, JAMES RAMBO, INC. & T/A XYZ CO. OR XYZ CORPORATION, DEFENDANTS,
v.
AMERICAN LAWYER MEDIA, L.P., T/A NEW JERSEY LAW JOURNAL, MOVANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 1992.
Decided May 22, 1992.
*623 Before Judges PETRELLA, A.M. STEIN and KESTIN.
Robert S. Steinbaum argued the cause for appellant.
Gerald M. Eisenstat argued the cause for respondents Ethan Zukerman and Robert Zukerman (Eisenstat, Gabage & Berman, attorneys; Gerald M. Eisenstat and Harry Furman, on the brief).
Robert F. Colquhoun argued the cause for respondent Piper Pools, Inc. (Colquhoun & Colquhoun, attorneys; Robert F. Colquhoun, on the brief).
PER CURIAM.
The New Jersey Law Journal (the Law Journal) appeals from the April 1, 1991 denial of its application for the unsealing of *624 the settlement record between plaintiffs Ethan Zukerman, a minor at the time the settlement was approved, his father Robert Zukerman, individually, and as guardian ad litem, and various defendants.[1]
On its appeal, the Law Journal argues that the trial judge did not properly inquire into the showing made by the Zukermans or the need for secrecy and that there was insufficient justification for keeping the record sealed.
The underlying litigation was instituted in May 1980. Ethan Zukerman, almost three years old, sustained severe brain damage and neurological impairment as a result of a near drowning in a neighbor's swimming pool on February 28, 1977. The matter proceeded through a rather lengthy and complicated history. See our earlier opinion in Zukerman v. Piper Pools, Inc., 232 N.J. Super. 74, 556 A.2d 775 (App.Div. 1989). The case ultimately culminated in a settlement some ten years after the litigation began.[2] Pursuant to R. 4:44-3, Zukerman moved for a "friendly" settlement proceeding to obtain judicial approval of the settlement because it involved an infant. He also sought an order requiring that all subsequent proceedings be held in camera and that the record of the settlement be sealed. His application was granted in all respects on December 27, 1990.
On February 28, 1991, the Law Journal applied for an order to show cause seeking to (1) vacate the order sealing the record of the settlement of the case; (2) require release of the transcript of the friendly settlement hearing and any exhibits *625 introduced into evidence; and (3) remove any restriction precluding counsel from discussing the terms of the settlement.
Aside from our earlier reported decision, the case apparently received publicity during jury selection in a Gloucester County Times article on December 12, 1990, which said that settlement offers ranging from $7.4 million to $9.1 million had previously been rejected.
Zukerman opposed the Law Journal's application based on his certification and that of Harry Curley, a former police officer in Zukerman's hometown of Vineland and its present mayor. Zukerman stated that he and his wife had requested that the settlement be sealed to preserve their privacy as well as that of their minor child. He now claims that despite the amount of the settlement being kept confidential, the family received various overtures from persons seeking to assist them in various investments and financial planning devices. However, he asserts he had been able to dispel misconceptions of the amount of the settlement because the exact figure had not been disclosed.
Zukerman's certification further expressed concern that if the settlement terms were public, it would require the family to provide security for Ethan whenever he left the family's personal care and guidance because Ethan's disabilities inhibit his ability to appreciate exposure to danger as well as overtures of strangers.
The certification of Curley concluded that the City of Vineland would be unable to provide special protection for Ethan. Curley stated that in the past, he had been involved in a similar situation in which one of the City's residents was the victim of thefts and harassment after it was disclosed that he had obtained a substantial settlement.
Piper Pools, Inc. also opposed the Law Journal's application. It indicated that a reporter had called the firm requesting information about the settlement, but was advised that no one in the office was permitted to speak about the matter.
*626 Whether this settlement, placed on the record by virtue of the litigant's status as a minor, may properly be sealed has not previously been addressed. The appeal implicates both the common law presumption that the public has a right of access to judicial records and documents as well as the First Amendment's guarantee of access in civil judicial proceedings. See Richmond Newspapers v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059 (3rd Cir.1984).
Our Rules of Court provide generally for access in R. 1:2-1 which states:
All trials, hearings of motions and other applications, pretrial conferences, arraignments, sentencing conferences (except with members of the probation department) and appeals shall be conducted in open court unless otherwise provided by rule or statute. Settlement conferences, however, may be heard at the bench or in chambers.
The public's right of access to judicial proceedings, as well as to inspect and copy judicial records, is not absolute, however. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982); Nixon v. Warner Communications, Inc., supra, 435 U.S. at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580; Publicker Indus., Inc. v. Cohen, supra, 733 F.2d at 1070; Div. of Youth & Family Services v. J.B., 120 N.J. 112, 123, 576 A.2d 261 (1990). Trial courts have the inherent power to seal court records when the interests of privacy outweigh the public's right to know. In re Knoxville News  Sentinel Company, Inc., 723 F.2d 470, 474 (6th Cir.1983). "[I]n exercising its discretionary power to control and seal records," the court "should weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." In re Franklin Nat'l Bank Securities Litig., 92 F.R.D. 468, 471 (F.D.N.Y. 1981), aff'd sub nom. FDIC v. Ernst & Ernst, 677 F.2d 230 (2d Cir.1982), quoting Crystal Growers Corp. v. Dobbins, 616 F.2d 458 (10th Cir.1980). "The strong common law presumption of access must be balanced against the factors militating against access." *627 Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc., 800 F.2d 339, 344 (3rd Cir.1986).
Thus, under case law and the Rules of Court, a judge has some discretion to relax R. 1:2-1 and enter an order limiting or even prohibiting access to certain judicial proceedings and records. In the context of limiting access to proceedings involving allegations of sexual, physical or psychological abuse against minors our Supreme Court has instructed:
There is an expectation based in history and the first amendment, and embodied in our Court Rules, see R. 1:2-1, that civil trials and proceedings will be open to the public. That expectation may be overcome when an important state interest is at stake. [Div. of Youth & Family Services v. J.B., supra, 120 N.J. at 127, 576 A.2d 261.]
One who seeks to overcome the expectation of access bears the burden of establishing the requisite important state interest. Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc., 800 F.2d 339, 344 (3rd Cir.1986).
While there is a strong public policy favoring settlements, see Jannarone v. W.T. Co., 65 N.J. Super. 472, 168 A.2d 72 (App.Div. 1961), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961), this does not override the presumption of access to court records. Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc., supra, 800 F.2d at 346. In our view, the public policy of encouraging settlements would not be impaired by public disclosure of the terms of a settlement involving an infant to the extent it has been placed on the record in a judicial proceeding required to be public. It is unlikely that a litigant who is required to spread the terms of an infant settlement on the record will reject a beneficial settlement simply to avoid disclosure of the precise amount,[3] particularly when the alternative *628 is proceeding to trial, with all of the attendant risks, accompanied by the certainty that the result will be a matter of public record.
The Zukermans argue that an important governmental interest is at stake, to wit, protection of the privacy interests of a physically and psychologically impaired minor litigant. They contend that the motion judge correctly held that the best interests of the minor litigant override the public's right of access.
Our courts have gone to great lengths to protect the privacy interests of minors in the context of cases involving allegations of sexual, physical or psychological abuse, and serious neglect. See Application of VV Publishing Corp., 120 N.J. 508, 519-520, 577 A.2d 412 (1990) (court may limit media's access to public records by allowing access only to redacted transcripts in sex abuse case where media had access to trial proceedings, but was prohibited from publishing the names, addresses, or other identifying characteristics of victims and their families); and Div. of Youth & Family Services v. J.B., supra, 120 N.J. 112, 576 A.2d 261 (The proceedings were opened in J.B. The Court noted that in cases involving sexual, physical or psychological abuse or neglect, an important if not compelling state interest is necessary to justify closure of court proceedings and documents.). This appeal is not a case involving an important state interest such as the identity of minors or others who are victims of sexual, physical or psychological abuse. Here, the Zukermans have not persuasively demonstrated that shielding a minor in personal injury litigation from disclosure of the terms of a settlement rises to the same level of protectable privacy interest. Certainly, the psychological and developmental interests of victims and their families in child abuse and neglect cases are in a different category than those interests at issue in the case now before us.
The Zukermans' "privacy" interests, couched in terms of being safe, secure and free from annoyance or harassment, are *629 important personal interests, especially in light of the physical and psychological disabilities of Ethan. However, such interests do not outweigh our State's strong public policy favoring open and accessible judicial proceedings. The Zukermans' personal interests in this case do not equate with the State's interest in protecting minors such as in cases involving trauma, embarrassment and other possible detrimental effects related to public disclosure of sexual, physical or psychological abuse. Since the Zukermans failed to satisfy their burden of establishing an important governmental interest, they are not entitled to keep sealed what are actually public proceedings which are neither authorized by statute nor court rule to be shielded from public inquiry.
The order sealing the public record of the settlement is accordingly reversed. No costs.
NOTES
[1] Any reference to Zukerman in the singular, is to Robert Zukerman, as guardian ad litem.
[2] The first trial began in September 1988. During jury selection, defendants' settlement offer was rejected by the guardian ad litem. Upon motion by defendant Piper Pools, Inc., Zukerman was removed as guardian. We reversed. Zukerman v. Piper Pools, Inc., 232 N.J. Super. 74, 556 A.2d 775 (App. Div. 1989).

After jury selection in the second trial in December 1990, the parties reached a settlement.
[3] In cases where the terms of a settlement are embodied in a private agreement and not spread on the record of court proceedings, a press entity has no right to obtain disclosure from parties who wish to protect the confidentiality. Participants always have the right to decline to discuss the matter with the press whether or not the settlement agreement is placed on the record.