**Jeffrey T. JOCHIMS, Plaintiff,**

**v.**

**ISUZU MOTORS, LTD., Defendant.**

No. 3–89–CV–70109.

United States District Court,
S.D. Iowa,
Davenport Division.

Nov. 30, 1992.

Steven J. Crowley and Darwin Bunger of the Crowley Law Firm, Burlington, IA, for plaintiff.

John McShane and Mary E. Bolkcom of Bowman & Brooke, Minneapolis, MN, for defendant.

### ORDER DENYING MOTION FOR MODIFICATION OF PROTECTIVE ORDER

BENNETT, United States Magistrate Judge.

This is a products liability suit in which Plaintiff Jeffrey T. Jochims ("Jochims") alleges he was severely injured when the 1986 Isuzu Trooper II sport utility vehicle he was driving rolled over. The issue pres-

ently before the court is whether the court should modify a stipulated protective order previously entered in this litigation. Jochims seeks modification of the protective order to share confidential documents produced by Isuzu Motors, Ltd. ("Isuzu") with other plaintiffs' counsel in other pending litigation against Isuzu.

## I. INTRODUCTION AND BACKGROUND.

This matter is before the court pursuant to Plaintiff's Motion for Modification of Protective Order filed October 8, 1992. On October 22, 1992, an order was filed granting Defendant until November 2, 1992, in which to file its resistance to the motion, and setting hearing in this matter for a telephonic conference call on November 6, 1992. The telephonic conference was held on that date. Steven J. Crowley of the Crowley Law Firm appeared on behalf of Jochims. Mary Bolkcum of Bowman & Brooke of Minneapolis, Minnesota, appeared on behalf of Isuzu.

By stipulation of the parties, then United States Magistrate Judge Longstaff[1] entered a protective order in this case on January 24, 1991.[2] All discovery in this case since then has proceeded under the terms of the protective order.[3] Jochims has now moved to "amend" the protective order by substituting a new protective order he proposes in its place.[4] Jochims proposes the substitution in order to permit other plaintiffs' counsel in litigation with Isuzu to obtain documents which under the current protective order they are foreclosed from providing to them.

The proposed protective order would significantly alter several provisions of the current protective order. First, the proposed protective order would only permit Isuzu from preventing the dissemination of what it believes are confidential documents it is able to demonstrate that: (1) the documents contains "a trade secret or other confidential technical information," and (2) the documents's dissemination would "significantly damage IML's competitive position."[5] Proposed Protective Order at ¶ 2. The January 24, 1991, protective order's definition of what constitutes confidential materials is not as restrictive. Instead, it merely provides that "the terms of this Stipulation and Protective Order shall include information about defendant's business, products, practices, or procedures which, in the ordinary course of business, is not voluntarily disclosed by defendant to the public or to third persons or entities who do not have a need to know. This description is intended to include trade secrets as well as any confidential research, development, or commercial information." Protective Order at ¶ 8.

Second, the proposed protective order also changes which party has the burden of raising the issue of a document's confidential designation with the court. The proposed protective order would require Isuzu to raise the issue within ten (10) days of being informed of a designation dispute. Proposed Protective Order at ¶ 3. The current protective order places that responsibility on Jochims. Protective Order at 5. The proposed protective order also permits Jochims' counsel to permanently retain all confidential Isuzu documents obtained through discovery in this case and to use those documents in any subsequent lawsuits against Isuzu. Proposed Protective

---

1. Judge Longstaff was subsequently appointed a United States District Court Judge on November 5, 1991.

2. Because the parties could not agree on two aspects of the protective order, neither of which is relevant to the matter before the court, the parties provided Judge Longstaff with two alternative protective orders. Judge Longstaff entered the protective order submitted by Isuzu. Copies of Jochims' counsel's letter to Judge Longstaff explaining the differences in the two protective orders, as well as the two protective

orders, constitute Exhibit D which is attached to Defendant's Memorandum. A copy of the January 24, 1991, protective order is attached to this order as Appendix A.

3. The protective order is attached to Defendant's Memorandum in Opposition as Exhibit A.

4. The amended protective order proposed by Jochims is attached to this order as Appendix B.

5. Jochims' moving papers do not disclose the source of this requirement.

Order at ¶ 6. The current protective order requires the return of Isuzu's documents once this litigation is completed. Protective Order at ¶ 7. Finally, the proposed protective order permits Jochims' counsel to disseminate the material to other counsel with litigation against Isuzu, their experts, and to members of the Attorneys Information Exchange Group.[6] Proposed Protective Order at ¶ 4. The current protective order would not permit such disclosures. Protective Order ¶ 6.

## II. APPLICABLE LEGAL STANDARDS AND ANALYSIS.

▮ This court has discretion in determining whether or not to amend or modify a protective order. *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 955 (8th Cir.), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *American Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393, 403 (W.D.Va.1987); *In re "Agent Orange" Product Liability Litigation,* 104 F.R.D. 559, 568 (E.D.N.Y.1985). Jochims contends that the burden is on Isuzu to demonstrate the need for maintaining the existing protective order. In support of this proposition, Jochims cites as authority two cases, *In re "Agent Orange"*

*Product Liability Litigation,* 104 F.R.D. at 568, and *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 101 F.R.D. 34, 40 (C.D.Cal.1984). Neither of these cases, however, deal with the situation before the court, namely the modification of a stipulated protective order by a party to that order. Rather both cases cited by Jochims pertain to modifications of court directed protective orders by intervening parties.[7] In contrast, there is general unanimity among the courts that where a party to stipulated protective order seeks to modify that protective order, that party must demonstrate particular good cause in order to gain relief from the agreed to protective order. *See Richard Wolf Medical Instruments Corp. v. Dory,* 130 F.R.D. 389, 392 (N.D.Ill.1990), *aff'd sub nom. Richard Wolf Medical Instruments Corp. v. EDAP, S.A.,* 928 F.2d 410 (Fed.Cir.1991); *see also Omega Homes, Inc.,* 656 F.Supp. at 404; *Ball v. Field,* No. 90–C–4383, 1992 WL 57187, at *15–16 (N.D.Ill. Mar. 19, 1992); *Viskase Corp. v. W.R. Grace & Co.,* No. 90–C–7515, 1992 WL 13679, at *5 (N.D.Ill. Jan. 24, 1992); *cf. Grady,* 594 F.2d at 597 (intervenor seeking to modify a stipulated protective order held to "higher burden"). *But see Kraszewski v. State Farm General Ins. Co.,* 139 F.R.D. 156, 159 (N.D.Cal.1991).[8] The courts' rationale for

---

6. The parties do not disclose the exact nature of the Attorney's Information Exchange Group. This group it apparently an organization of plaintiff's counsel involved in similar litigation which share the produce harvested from discovery in such litigation.

7. There is split in authority as to whether a party seeking to uphold the terms of the protective order, as opposed to an intervenor party which wishes to modify the protective order, should bear the burden of demonstrating good cause for the continuation or extension of a protective order. Compare *Petroleum Products,* 101 F.R.D. at 44 with *Federal Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982) and *Grady,* 594 F.2d at 597. One line of authorities, illustrated by the decisions in *Grady* and *Ernst & Ernst,* place the burden on the intervening party moving for modification. *Ernst & Ernst,* 677 F.2d at 232; *Grady,* 594 F.2d at 597. The rationale for this line of cases is that a party to a protective order is entitled to rely upon it. *See Ernst & Ernst,* 677 F.2d at 232; *Grady,* 594 F.2d at 597; *Martindell v. International Tel. &*

*Tel. Corp.,* 594 F.2d 291, 295 (2d Cir.1979). A second line of cases, however, holds that the party seeking to continue a protective order bears the burden of demonstrating good cause. *Petroleum Products,* 101 F.R.D. at 44. The rationale underscoring this line of cases is that to place the burden on the party seeking discovery of documents covered by a protective order would place an undue burden on the public's right of access and generally ignore the fact that civil litigants have an obligation to produce all relevant information. *Id.* at 43–44.

8. In *Kraszewski,* a class action sex discrimination case, the court granted a motion to modify the protective order brought by class counsel in order that documents obtained through discovery could be used in a separate class action age discrimination lawsuit pending against the defendant in the Central District of California. 139 F.R.D. at 157. Unlike the situation here, in *Kraszewski* there was some overlap between the plaintiffs in both cases, and the protective order at issue contained a specific provision that it

this standard is that a party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order. *See Omega Homes, Inc.,* 656 F.Supp. at 404; *Dory,* 130 F.R.D. at 392; *cf. Grady,* 594 F.2d at 597 (same rationale applies in situation where third party seeks to modify protective order); *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979) (in third party intervention case court held that "[party] should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government . . ."). In the closely related context of deposition testimony given pursuant to a protective order, the Second Circuit Court of Appeals noted in *Martindell,* "[u]nless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." *Martindell,* 594 F.2d at 295.

Jochims has failed to make such a showing in this case. Jochims seeks to modify the stipulated protective order in this case in order to share its discovery with other Plaintiffs' counsel with lawsuits pending against Isuzu. Jochims states that the desired modification of the protective order would reduce the cost and waste of repetitive discovery in similar lawsuits against Isuzu. While there is no doubt truth to this assertion, the circumstances which allegedly require modification of the protective order should have been apparent to

Jochims at the time he entered into the protective order. Even were the court to assume that Jochims' case was the first such suit against Isuzu, Jochims' counsel should have surmised that other such lawsuits would follow and counsel in those lawsuits would seek access to the same confidential documents which were the subject of discovery here. Thus, Jochims' counsel should have sought to have a suitable provision permitting disclose incorporated into the protective order.[9]

Not surprisingly, a party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement has been held to not constitute good cause for relief from the protective order. *See Ball,* No. 90 C 4383, 1992 WL 57187, at *16; *Viskase Corp.,* No. 90 C 7515, 1992 WL 13679, at *5. In *Viskase,* the district court refused to permit the modification of a protective order to permit plaintiff to disclose to its personnel the sales descriptions of defendant's products charged with infringing plaintiff's patents. In its ruling, the court noted that plaintiff should have anticipated the problem at the time it negotiated the protective order. The court went on to point out that:

> Now, to remedy its apparent oversight, plaintiff seeks to alter and expand the terms of the Protective Order. Such a modification is not to be undertaken lightly, however. Instead, plaintiff must make a substantial showing of good cause to relieve it of the burden of the agreed Protective Order, particularly when the proposed modification relates to a matter within the parameters of the parties' agreement.

*Viskase Corp.,* No. 90 C 7515, 1992 WL 13679, at *5.

---

was "without prejudice to the right of any party to seek modification of it from the Court with respect to any specified materials." *Id.* at 159. In support of his decision, Chief Judge Henderson relied upon two decisions, *Olympic Refining Co. v. Carter,* 332 F.2d 260 (9th Cir.), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964) and *Wilk v. American Medical Ass'n,* 635 F.2d 1295 (7th Cir.1980). Both of those decisions concerned third party intervention in anti-trust litigation for the purpose of modifying protective orders in order to obtain

documents for use in other litigation; a factual scenario which is not present in the instant case.

**9.** The court notes that such a provision was placed in the protective order entered into in *Baker v. American Isuzu Motors, Inc.,* No. 89–1266 (C.D.Ill. Feb. 14, 1991). A copy of the protective order entered in that case is attached to Exhibit A of Plaintiff's Memorandum.

In rejecting the same argument put forward by Jochims in this case for modification, Chief Judge Turk cogently noted in *Omega Homes, Inc.*:

> Omega's recent idea of sharing discovery with litigants in other cases must be judged by the court with the understanding that his was never a proposed or expressly anticipated step when CAC disclosed information to Omega in the first place. Omega argues that the parties with whom it seeks to share discovery will save considerable time and expense if the court grants them access to the discovery in this case. It also assures the court that it will refrain from turning over any of CAC's confidential business information to those other parties. The court finds neither of these arguments compelling enough to justify abrogating the order previously agreed to. Omega and CAC fairly agreed to the protective order, apparently through negotiations by their sophisticated and well informed counsel. Throughout discovery CAC relied on that mutual understanding that the information it was disclosing was to be used solely for preparing this case. In effect, Omega is asking the court to rewrite the terms of the stipulated order and to apply them retroactively. The court refuses to endorse Omega's tactic of inducing disclosure under a set of ground rules and then avoiding any limitation on itself by asking the court to come in and change those rules.

*Omega Homes, Inc.*, 656 F.Supp. at 404 (citation omitted).

The court finds Chief Judge Turk's reasoning to be compelling. To permit Jochims to conduct discovery under one set of rules and then have the court abrogate those rules after Jochims has achieved his desired result would be to countenance discovery by ambush. *See GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 131 (S.D.N.Y.1976) (in denying motion to modify protective order court noted that it was too late in the day to know what party's position would have been regarding turning documents over to government in light of the explicit understanding between the parties that the documents were being given solely for use in case). The obvious effect of such an approach to discovery would be to place a chill upon future stipulated confidentiality agreements. This in turn would likely impede the processing of cases as the courts are called upon to rule upon countless motions under Rule 26. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 879 (E.D.Pa.1981).

Therefore, the court concludes that Jochims has not demonstrated good cause which would require modification of the protective order, and Jochims' motion is denied. The court wishes to point out that although it has denied Jochims' motion to modify the protective order in this case, this order in no way forecloses other plaintiffs with litigation pending against Isuzu from intervening in this case for the purpose of attempting a modification of the January 24, 1991, protective order in this case. The court, of course, expresses no opinion as to the possible validity of such a motion. Compare *Kraszewski*, 139 F.R.D. at 157 with *Rogers v. Proctor & Gamble Co.*, 107 F.R.D. 351 (E.D.Mo.1985). In *Kraszewski*, the court held that it would permit the modification of the protective order at issue in that case to allow the use of confidential discovery in other similar litigation. *Kraszewski*, 139 F.R.D. at 159–60. In so holding, the court pointedly remarked that the following reasoning from Judge Wisdom's decision in *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir. 1980), was applicable to the facts before it:

> "[A]s a general proposition, pretrial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings." This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process ... We therefore ... hold that where an appropriate modification of a protective order can place pri-

vate litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. *Kraszewski,* 139 F.R.D. at 159–60 (quoting *Wilk,* 635 F.2d at 1299) (citations omitted). Again, as noted above, the court professes no assessment as to the validity of such a motion in this case. Jochims' Motion for Modification of Protective Order is denied.

IT IS SO ORDERED.

## APPENDIX A

United States District Court
Southern District of Iowa
Eastern Division

Jeffrey T. Jochims,

Plaintiff,

vs.

Isuzu Motors, Ltd.,

Defendant.

Civil No. 89–109–D–2

January 24, 1991

PROTECTIVE ORDER

Pursuant to a written Stipulation,

IT IS ORDERED that:

1. Defendant will designate the documents or other materials which he contends fall within the terms of this Stipulation and Protective Order with the case name and the words "Confidential—Protected by Court Order" at or before the time they are produced for inspection and copying.

2. Plaintiff, his agents and attorneys, shall not divulge in any manner the documents or other materials produced by defendant which are labeled with the case name and the words "Confidential—Protected by Court Order" to any person or entity except the plaintiff, his attorneys, and any agents, experts, or consultants employed by plaintiff in connection with this action. This agreement includes not revealing the substance of any such docu-

ments or other materials by way of any type of copy or summary.

3. This Stipulation and Protective Order includes any competitively sensitive data which may be an exhibit to a deposition or otherwise part of a deposition in this action. The use of such confidential information during depositions in this action does not waive the terms of this Stipulation and Protective Order, and all parties hereto agree to assist in whatever way necessary to maintain the confidentialities agreed to herein. Any deposition testimony or competitively sensitive data attached as an exhibit to any deposition shall be sealed and protected from disclosure by this Stipulation and Protective Order.

4. This Stipulation and Protective Order includes any appropriately designated competitively sensitive data which may be admitted into evidence during the trial of this matter. Such admissions into evidence do not waive the terms of this Stipulation and Protective Order. Any such trial testimony or competitively sensitive data produced as an exhibit at trial shall be sealed and protected from disclosure by this Stipulation and Protective Order.

5. To the extent plaintiff or his agents disagree with the designation given by defendant to any documents or other materials, they agree to apprise counsel for defendant of the reasons for their disagreement and the uses they wish to make of the documents which would be prohibited by the terms of this Stipulation and Protective Order. If the parties then are unable to reach an accommodation, plaintiff further agrees to raise the issue for decision by the court before making a use of any document which violates this Stipulation and Protective Order.

6. The employees, experts or consultants of the plaintiff to whom such documents, materials or information are intended to be presented shall first sign and date a true and correct copy of this Stipulation and Protective Order, and shall agree to be bound by its terms, prior to the receipt of any such documents, materials or information or the contents or the substance thereof. A copy of this Stipulation and Protec-

tive Order dated and signed by the experts or consultants of the plaintiff shall be forwarded to the undersigned attorneys for defendant at the time plaintiff determines that he expects to call the expert or consultant as a witness at trial. With regard to employees, experts, or consultants whom plaintiff does not plan to call as a witness at trial, a copy of this Stipulation and Protective Order dated and signed shall be forwarded to counsel for the defendant at the conclusion of this litigation, whether by trial, appeal, or settlement, or at such time as defendant makes a showing of exceptional circumstances which entitle the defendant to discover facts known or opinions held by such employees, experts, or consultants.

7. Upon completion of the trial and any appeals from this action and the satisfaction of any judgment, or upon conclusion of any settlement, plaintiff's attorneys shall, upon request, return to counsel for defendant all documents or other materials which were designated with the case name and the words "Confidential—Protected by Court Order," and shall also return any copies, prints, negatives, or summaries of those documents or other materials. At the same time, plaintiff's attorneys shall provide to counsel for defendant an affidavit stating that they have complied with the provisions of this Stipulation and Protective Order and identifying each expert or consultant to whom they have given, shown, or otherwise divulged any such documents or other materials. Each such expert or consultant shall also return any documents or other materials designated with the case name and the words "Confidential—Protected by Court Order," any copies, prints, negatives, or summaries of such documents in their possession, and shall provide an affidavit stating that they received a copy of this Stipulation and Protective Order and that they complied with its provisions.

8. It is agreed by and between the parties that documents and other items entitled to protection under the terms of this Stipulation and Protective Order shall include information about defendant's business, products, practices, or procedures which, in the ordinary course of business, is not voluntarily disclosed by defendant to the public or to third persons or entities who do not have a need to know. This description is intended to include trade secrets as well as any confidential research, development, or commercial information.

DONE IN OPEN COURT this 24th day of January, 1991.

/s/  [Signature]
Magistrate Judge
United States District Court

## APPENDIX B

In the United States District Court
Southern District of Iowa
Eastern Division

Jeffrey T. Jochims,

Plaintiff,

vs.

Isuzu Motors, Ltd.,

Defendant.

Civil No. 3–89–CV–70109

AMENDED PROTECTIVE ORDER

In order to preserve and maintain the confidentiality of certain documents and materials produced by Isuzu Motors, Ltd. (IML) in this lawsuit, IT IS ORDERED that:

1. Documents to be produced by IML to Jeffrey Jochims during discovery in this litigation which contain confidential technical information or genuine trade secrets shall hereinafter be referred to as protected documents. The term "protected documents" shall likewise apply to any IML documents produced to counsel for the Plaintiffs in other Isuzu Trooper litigation. When used in this Order, the word "documents" means all written material, videotapes and all other tangible items. Except as otherwise indicated below, documents designated by IML as "confidential" that are or have been produced or delivered to Plaintiff or his attorneys, consultants, agents or experts in this action, shall be

protected documents and given confidential treatment as defined below.

2. The burden of proving that a protected document contains a trade secret or other confidential technical information is on IML. Prior to designating any material as "confidential", IML must make a bonafide determination that the material is, in fact, a trade secret or other confidential technical information, the dissemination of which would significantly damage IML's competitive position. A document which is otherwise "confidential" will not be treated as such if, on proper motion, the Court determines that such treatment adversely affects the safety of the general public and that the relief from the confidentiality provision is appropriate.

3. If Plaintiff disagrees with the "confidential" designation of any document, Plaintiff will so notify IML in writing by certified mail. Within ten (10) days of its receipt of this written notice, IML will apply to this Court to schedule a hearing for the purpose of establishing that the document or documents are truly confidential. Plaintiff will consider any document so marked as "confidential" until the Court makes a ruling on IML's request for the Court's protection on the disputed material or until the ten (10) day period for seeking a hearing has lapsed without IML making a request for hearing.

4. Both the protected documents and the information contained therein shall be treated as confidential. Except upon the prior written consent of IML or upon further Order of this Court, protected documents or information contained therein may be shown, disseminated or disclosed only to the following persons:

a. All attorneys of record for the Plaintiff in this case including members of their respective law firms, and any other attorney associated to assist in the preparation of the case for trial;

b. All employees of Plaintiff's counsel assisting in the preparation of the case for trial;

c. Experts and consultants retained by the Plaintiff for the preparation of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of IML in the automobile industry;

d. The Court, its staff, witnesses, and the jury in this case;

e. Any attorney representing Plaintiff and the experts involved in other cases against IML involving allegations of instability in the Isuzu Trooper line of motor vehicles, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of IML in the automotive industry;

f. Any Court in this country that has jurisdiction over IML so long as the case pending in that Court concerns issues involving IML products; and,

g. The Attorneys Information Exchange Group (hereinafter referred to as AIEG) so long as the materials provided to AIEG are maintained under the terms of this protective order and shared only with attorneys or other persons involved in Trooper litigation or litigation involving rollovers of products manufactured by IML.

5. Before being given access to any of the protected documents or the information contained in the documents, each person described in paragraph 3 above shall be advised of the terms of this Order, shall be given a copy of the Order, and shall agree to it in writing, using a standard form to be bound by its terms and to submit to the jurisdiction of this Court.

6. Plaintiff's counsel in this case shall not be required to return the protected documents to IML after the conclusion of this case and may retain the documents pursuant to the terms of this Order for use in any Isuzu Trooper II litigation or litigation involving IML products. This likewise applies to any documents already in Plaintiff's possession prior to this lawsuit.

7. To the extent that protected documents or information contained therein is used in the taking of depositions, the docu-

ments or information shall remain subject to the provisions of this Order.

8. This Protective Order shall not apply to the disclosure of protected documents or their contents at the time of trial through the receipt of protected documents into evidence or through the testimony of witnesses. The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the Court. These issues may be taken up as a separate matter upon the motion of any of the parties at the time of trial.

9. Affidavits produced by IML for the purpose of in-camera inspection by the Court in support of a response to a Motion to Compel Discovery are found not to constitute a waiver by IML of any claim of attorney/client and/or work privilege as to the underlying documents.

10. This Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and attorneys' successors, executors, personal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control.

11. Any individual or person who will submit to the jurisdiction of this Court by signing the form referred to earlier in this Order may have access to the documents for the purpose of copying. The individual or person so submitting him or herself to the jurisdiction of this Court will be responsible for returning the original and copies of the documents to the person providing access to the documents for the purpose of maintaining the confidentiality contemplated by this Order.

IT IS SO ORDERED.

DATED this _____ day of _____, 1992.

_____
U.S. District Court Judge

