[No. A068950. First Dist., Div. Four. Oct. 23, 1995.]

RAYMOND HANDLING CONCEPTS CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ROBERT ZUELZKE, Real Party in Interest.

**COUNSEL**

Carroll, Burdick & McDonough, Justs N. Karlsons, Garrett Sanderson III and Rosemary Springer for Petitioners.

No appearance for Respondent.

Joe R. McCray and Roberta D. Perkins for Real Party in Interest.

## OPINION

**POCHÉ, J.**—In this mandamus proceeding, Raymond Handling Concepts Corporation and the Raymond Corporation (petitioners) ask this court to prohibit dissemination of confidential discovery to counsel in other pending similar litigation. We decline to do so having concluded that the court did not abuse its discretion in the protective order it formulated to protect the discovery.

### PROCEDURAL HISTORY — FACTS

Robert Zuelzke (plaintiff and real party in interest) was injured while he was operating a stand-up forklift manufactured by petitioners. He filed suit against petitioners, alleging that his injuries occurred because "the directional/speed control assembly broke, locked in reverse at high speed and propelled the lift backwards out of control." The complaint sets forth causes of action for strict liability and negligence based upon alleged defects in the design of the forklift and its components as well as in the repair and maintenance of the forklift pursuant to a service agreement.

Petitioners produced confidential documents under an interim agreement with plaintiff made to afford petitioners the opportunity to move for a protective order which would prohibit plaintiff's counsel from sharing the information with counsel in other cases against petitioners. Plaintiff replied to the motion for a protective order by contending that the protective order sought was designed to relieve petitioners of the burden of establishing the confidential nature of the documents produced. Plaintiff also argued against the approval of a protective order which would prevent any sharing of information.

In reply, petitioners contended that they had met their burden of showing that the materials at issue were confidential. They referred the court to declarations filed in support of the motion in which petitioners' assistant general counsel and engineering manager identified the documents and explained the basis on which the claims for confidentiality as to the various documents were made. For example, it was asserted that documents classified as "production drawings" "constitute trade secrets" because "they memorialize the specific design of the product." "If our competitors obtained The Raymond Corporation's 'production drawings' about any product, these competitors could redesign their products without undertaking any of the research and development that has gone into the development and design of our products and their component systems . . . ."

Respondent court issued a protective order which provided: "1. That defendants may designate discovery provided as 'a trade secret or other confidential research, development or commercial information.' [¶] 2. That discovery so designated by defendant may be used by plaintiffs, their counsel and their consulting experts and expert witnesses solely for the purposes of this litigation. [¶] 3. That plaintiff[']s *counsel* may disclose said discovery so designated as confidential to *counsel* in other pending similar litigation. Said discovery shall not be disclosed or disseminated to the general public and in the event plaintiff[']s counsel elects to share discovery in this case with other counsel similarly situated in other similar pending litigation then counsel in such other litigation shall execute a stipulation agreeing to be bound by this protective order. Plaintiff[']s counsel shall maintain a list of counsel similarly situated to whom disclosure is made and shall notify defense counsel when such disclosure is made."

This petition challenges the above order insofar as it permits dissemination to counsel in other cases of documents subject to the protective order. Following our initial denial, petitioners sought review in the Supreme Court and the matter was retransferred to us with directions to issue our alternative writ. (Code Civ. Proc., § 1087.)[1] We have done so.[2]

## DISCUSSION

Provisions in California's Civil Discovery Act (§ 2016 et seq.) enable the trial court to protect discoverable material from undue exposure. For example, section 2031, covering the production of documents, provides in relevant part: "The court, for good cause shown, may make any order that justice requires to protect any party or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. This protective order may include, but is not limited to, one or more of the following directions: (1) That all or some of the items or categories of items in the inspection demand need not be produced or made available at all. . . . (4) That the inspection be made only on specified terms and conditions. (5) That a trade secret or other confidential research, development, or commercial information not be disclosed, or be disclosed only to specified persons or only in a specified way. . . . [¶] If the motion for a

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise designated.

[2]Since the filing of the petition, the underlying case has been tried to a jury verdict for plaintiff. To the extent that material subject to the protective order was admitted into evidence, the terms of the protective order are moot. Those materials are no longer protected from disclosure.

protective order is denied in whole or in part, the court may order that the party to whom the demand was directed provide or permit the discovery against which protection was sought on terms and conditions that are just." (§ 2031, subd. (e).)

■ As can be seen by the language of the above provision, the issuance and formulation of protective orders are to a large extent discretionary. (See *Coalition Against Police Abuse* v. *Superior Court* (1985) 170 Cal.App.3d 888, 904 [216 Cal.Rptr. 614].) Thus, petitioners contend, as they must, that respondent court abused its discretion in allowing dissemination of confidential materials and trade secrets to counsel in other similar cases.

No California case has addressed the question of such dissemination. The case cited to us which is most closely on point factually and procedurally is *Garcia* v. *Peeples* (Tex. 1987) 734 S.W.2d 343 [83 A.L.R.4th 975]. The plaintiff in *Garcia* sued General Motors Corporation (GMC) for injuries suffered when his 1982 Buick burst into flames after being struck in the rear by another vehicle. The plaintiff alleged that the fuel-fed fire was the result of a design defect in the Buick's fuel system. He protested a discovery order which would have precluded him from sharing confidential information, including trade secrets, in other cases similar to his action. GMC, as do petitioners in the instant case, contended it would be injured if competitors gained access to the information it sought to protect.

The reviewing court in *Garcia* held that the trial court abused its discretion in the blanket order. It balanced against the legitimate need of GMC to protect its trade secrets the public policies favoring the exchange of information, i.e., full disclosure and efficiency in the trial system. "Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses. [Citations.] [¶] In addition to making discovery more truthful, shared discovery makes the system itself more efficient. The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues. Discovery costs are no small part of the overall trial expense." (*Garcia* v. *Peeples*, *supra*, 734 S.W.2d at p. 347.)

The *Garcia* court concluded its discussion of this issue by remarking: "Out of an abundance of caution, the trial court, after determining which documents are true trade secrets, can require those wishing to share the discovered material to certify that they will not release it to competitors or others who would exploit it for their own economic gain. Such an order would guard GMC's proprietary information, while promoting efficiency in the trial process." (*Garcia* v. *Peeples*, *supra*, 734 S.W.2d at p. 348.)

The parties cite federal cases which recognize that the law encourages the sharing of information with other litigants and which reach varying results in the issuance of protective orders. (See, e.g., *Culinary Foods, Inc.* v. *Raychem Corp.* (N.D.Ill. 1993) 151 F.R.D. 297; *Kraszewski* v. *State Farm General Ins. Co.* (N.D.Cal. 1991) 139 F.R.D. 156; *Wauchop* v. *Domino's Pizza, Inc.* (N.D.Ind. 1991) 138 F.R.D. 539; *Ward* v. *Ford Motor Co.* (D.Colo. 1982) 93 F.R.D. 579.) While these cases are of interest, they obviously do not involve a determination of whether a trial court abused its discretion in formulating a protective order. We comment only on the *Kraszewski* case inasmuch as it involves trade secrets as well as other confidential documents.

In *Kraszewski*, the court was asked to modify a protective order which provided that any document marked confidential " 'shall be used only for the purposes of this litigation and not for any other purpose whatsoever' " (*Kraszewski* v. *State Farm General Ins. Co.*, *supra*, 139 F.R.D. at p. 158) in order to allow the discovery to be used in a similar sex discrimination suit against State Farm. The court analyzed the issue in reference to the principles applied by the Ninth Circuit in *Olympic Refining Company* v. *Carter* (9th Cir. 1964) 332 F.2d 260, an antitrust action. "In *Olympic Refining* the Ninth Circuit established the principle which has remained the rule in this and virtually all other circuits ever since." (*Kraszewski*, *supra*, 139 F.R.D. at p. 159.) This rule allows sharing of information in similar cases in order to ease the tasks of courts and litigants in the discovery process. As to State Farm's argument that some of the information covered by the protective order constituted trade secrets important to State Farm, the *Kraszewski* court again relied on the Ninth Circuit's discussion of trade secrets in *Olympic* where the court stated that no rule or statute "authorizes a district court to protect trade secrets and sensitive competitive information from such disclosure as is relevant to the subject matter involved in a pending action. All that may be done is to afford such protection from disclosure as is practicable, consistent with the right of access thereto for purposes of litigation." (Fn. omitted.) (*Olympic Refining Company*, *supra*, 332 F.2d at p. 265.)

█ Respondent court drafted a protective order in the instant case which accommodated the public interest in allowing the sharing of information to litigants in similar cases and the interest of petitioners in protecting confidential information and trade secrets from disclosure to their competitors. The order we review here allowed disclosure only to counsel in similar cases and only if counsel executed a stipulation agreeing to be bound by the protective order. The order further required counsel to notify defense counsel when disclosure was made. This gives defense counsel an opportunity to argue that the cases are not similar enough to warrant discovery and to aid in enforcement of the protective order.

We do not agree with petitioners that this protective order violated the principles and procedures enunciated in *Bridgestone/Firestone, Inc.* v. *Superior Court* (1992) 7 Cal.App.4th 1384 [9 Cal.Rptr.2d 709]. In *Bridgestone/Firestone*, the trial court ordered disclosure of trade secrets subject to a protective order. The appellate court held that the court erred in requiring disclosure merely on a showing that the information was relevant to the subject matter of the action. To protect the privilege accorded to trade secrets in Evidence Code section 1060, the court held that a trial court must balance the interests of both sides and articulated a three-step process: "We . . . hold that the party claiming the privilege has the burden of establishing its existence. [Citations.] Thereafter, the party seeking discovery must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. It is then up to the holder of the privilege to demonstrate any claimed disadvantages of a protective order." (*Bridgestone/Firestone, Inc.* v. *Superior Court, supra*, at p. 1393.)

By disclosing the information to plaintiff in the instant case and seeking a protective order, petitioners rendered unnecessary the first two steps above, i.e., their own showing of the existence of a trade secret and the plaintiff's showing of a need for the material. By so doing petitioners have conceded that the information was discoverable in the present case. Since plaintiff's attorney may share this discovery only with counsel in other similar cases, it must be assumed that the information is also discoverable in these other similar cases.

We conclude that respondent court did not abuse its discretion in entering the protective order. We therefore vacate the alternative writ and deny the petition.

Anderson, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied November 13, 1995, and petitioners' application for review by the Supreme Court was denied February 22, 1996. Kennard, J., was of the opinion that the application should be granted.